IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **EMILIA HERNANDEZ GALVAN,** individually and as independent administrator of and on behalf of the Estate of Michael Galvan and Michael Galvan's heir(s)-at-law and wrongful death beneficiaries; and **JOSE JUAN GALVAN,** Individually, §§§§§§§§§§ Plaintiffs, § § v. § § **ROCKWALL COUNTY, TEXAS; and TURN KEY HEALTH CLINICS, LLC,** § § § § Defendants. § | Civil Action No. **3:24-CV-2388-L** |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Turn Key Health Clinics, LLC's ("Turn Key") Motion to Dismiss and Brief in Support ("First Motion") (Doc. 9), filed October 15, 2024; and Defendant's Motion to Dismiss First Amended Original Complaint and Brief in Support ("Second Motion") (Doc. 17), filed November 19, 2024. On January 31, 2025, Plaintiffs Emilia Hernandez Galvan in her individual capacity and as the independent administrator of the Estate of Michael Galvan, and Jose Galvan filed their Response To Defendant Turn Key Health Clinics, LLC's Motion To Dismiss ("Response") (Doc. 23). Finally, on February 14, 2025, Defendant filed its Reply to Plaintiffs' Response to Motion to Dismiss Amended Complaint ("Reply") (Doc. 24). After carefully considering Turn Key's Motions, the pleadings, Response, Reply, record, and applicable law, the court, for the reasons herein stated, **denies as moot** the First Motion, and **denies in part and grants in part** the Second Motion.

**Memorandum Opinion and Order – Page 1**

I.     **Factual Background**[1]

This is a civil rights action filed by Plaintiff Emilia Hernandez Galvan in her individual capacity and as the independent administrator of the Estate of Michael Galvan ("Mr. Galvan" or "Decedent") and Plaintiff Jose Galvan, who is suing in his individual capacity and as a wrongful death beneficiary (collectively "Plaintiffs"). Pls.' Am. Compl. at 3. Plaintiffs filed their Amended Complaint against Defendants Rockwall County, Texas, and Turn Key Health Clinics, LLC, pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth Amendment to the United States Constitution, the Texas wrongful death statute, the Texas survival statute, and negligence.

Mr. Galvan was booked into the Rockwall County Jail on March 24, 2023, at approximately 2:53 a.m. During the booking, Rockwall County Jail staff were informed of Mr. Galvan's history of seizures and epilepsy, and that he was taking medications and needed a special diet because he had irritable bowel syndrome. On March 25, 2023, a nurse took Mr. Galvan's vitals twice within 15 minutes. The next day, March 26, 2023, a nurse checked Mr. Galvan's vitals and gave him his medication. Likewise, on March 27 and 28, 2023, a nurse checked Mr. Galvan's vitals and gave him his medication. On March 29, 2023, Mr. Galvan was transferred from his cell to a medical doctor and placed into a medical holding cell, where he was observed talking to himself and possibly hallucinating.

In the early morning of March 30, 2023, Mr. Galvan was moved to special housing because he was exhibiting strange behavior. The next day, Mr. Galvan was observed talking to himself for several hours, refused to eat, had not eaten for over 24 hours, urinated on the floor twice, and fell backwards and hit his head on the floor. He was taken to be examined by the medical professionals,

---

[1] The factual allegations are taken from Plaintiffs' First Amended Original Complaint (Doc. 13), filed November 5, 2024, and are taken as true for the purposes of adjudicating the Motion consistent with the standard for a 12(b)(6) motion.

where his vitals were taken, and he was sent back to his cell. Later that day, Mr. Galvan was seen talking to himself again and hitting his head on the floor numerous times after falling. During one of his falls, Mr. Galvan sat on the floor and wiped his urine on the floor with his feet and hands. Between the night of March 31 and April 1, Mr. Galvan hit his head again. Around midnight on April 1, 2023, a nurse came to Mr. Galvan's cell and observed him lying on his back with his head toward the door. Nine minutes later, Mr. Galvan was no longer moving, and he was taken to a hospital for treatment. At 8:18 p.m. on April 13, 2023, Mr. Galvan died as a result of blunt force trauma to his head.

## II.   Parties' Contentions

### A.   Plaintiffs' Contentions

Plaintiffs contend that Decedent's constitutional rights, including rights to receive reasonable healthcare, to be protected, and to not be punished as a pretrial detainee, were violated under 42 U.S.C. § 1983. Pls.' Am. Compl. at 44. Plaintiffs allege that the Texas wrongful death and survival statutes create an effective remedy for their claims brought pursuant to 42 U.S.C. § 1983. *Id.* at 43. Under § 1983, Plaintiffs assert both condition of confinement and episodic acts or omissions claims. *Id.* at 5-6. Plaintiffs allege their conditions of confinement and episodic acts or omissions claims arise from the policies, practices, and/or customs of Defendants. *Id.* at 39. In support of these claims against Turn Key, Plaintiffs allege the following actions or practices by Turn Key: not having a full-time, properly licensed and experienced medical professional on staff; taking vital signs as "cover" in case of a serious medical event; failure to provide or delaying provision of medical treatment; failure to act on observation of serious health issues; ignoring video feeds for detainees with serious medical issues; refusal to transport detainees in need of medical care; only contacting emergency services when a detainee is near death or unresponsive;

failure to adequately monitor detainees and their food/water consumption and sleep; failure to appropriately communicate medical needs between shift changes; and failure to reprimand employees for action or inaction related to Decedent's death. *Id.* at 41-42. Further, in their Amended Complaint, Plaintiffs allege that several reports by the Texas Commission on Jail Standards ("TCJS") show Rockwall County Jail failed to comply with TCJS standards on multiple occasions. *Id.* at 26. Plaintiffs argue the reports show a failure to: "(1) provide emergency or necessary medical care, (2) monitor detainees, (3) communicate a detainee's serious medical needs between shifts, and/or (4) train jailers." *Id.*

Specifically regarding Plaintiffs' conditions of confinement claim, they allege that the conditions were not related to a legitimate governmental objective, but rather they were driven by cost-saving measures as shown by Turn Key's marketing, reduced staffing, and attempt to avoid outside medical care and transportation. *Id.* at 31, 41.

Specifically regarding Plaintiffs' episodic acts or omissions claim, they allege that relevant actors were both deliberately indifferent and objectively unreasonable. *Id.* at 40. Plaintiffs allege that Turn Key made deliberate decisions and acted in a deliberately indifferent manner or objectively unreasonable manner when implementing or allowing the policies, practices, and customs behind Decedent's suffering and death. *Id.* at 30. This indifference is shown by Decedent receiving only minimal care, ineffective treatment, or no treatment, for a serious medical condition that Turn Key and its employees had knowledge of. *Id.* at 44.

Plaintiffs also plead that Turn Key is liable to them as a result of negligence and/or medical negligence/malpractice resulting in Decedent's pain and suffering and/or death. *Id.* at 47. Plaintiffs allege that Turn Key and its employees and agents owed Decedent a duty of care, breached those duties, and proximately caused Decedent's injuries and damages. *Id.* at 47. Plaintiffs argue that

Turn Key is liable for its actions pursuant to respondeat superior and/or other vicarious liability principles. *Id.* at 47.

### B. Defendant's Contentions

Turn Key contends that Plaintiffs have failed to state a claim upon which relief may be granted. Doc. 17 at 5. Concerning Plaintiffs' conditions of confinement claim, Turn Key argues that the Fifth Circuit applies deliberate indifference standard to conditions of confinement claims. *Id.* at 7. Regarding Plaintiffs' episodic acts or omissions claim, Turn Key argues that Plaintiffs must show subjective and deliberate indifference to Decedent's rights, and a showing of mere negligence does not reach the level of deliberate indifference. *Id.* at 5, 7. Turn Key states that Plaintiffs can only use Texas's wrongful death and survival statutes as vehicles for remedy under § 1983 if they can show a constitutional violation and causal connection between the violation and the death and/or injury of the Decedent. *Id.* at 12-13. Finally, Turn Key argues that Plaintiffs' negligence claim should be dismissed as § 1983 imposes liability for violations of constitutional rights, not violations arising out of state tort law. *Id.* at 13.

In Turn Key's Second Motion, it does not discuss the contents of Plaintiffs' Amended Complaint until two subheadings under the negligence heading. *Id.* at 14-22. It is unclear to the court to which prior parts of the Second Motion this analysis is meant to apply. In this final analysis, Turn Key argues Decedent's behavior did not visibly change before and after his head injuries to render Decedent's medical condition obvious to Turn Key staff. *Id.* at 14-15. Turn Key argues that its lack of awareness of Decedent's condition and the treatment he received for the falls show that its conduct did not reach the level of deliberate indifference and that Plaintiffs failed to plead facts sufficient to show otherwise. *Id.* at 15-16. Plaintiffs did not allege facts in their Amended Complaint to show a Turn Key employee refused to treat Decedent, ignored his

complaints, intentionally treated him incorrectly, or acted in any similar way that clearly showed a wanton disregard for a serious medical need. *Id.* at 17. Turn Key also contends that Plaintiffs failed to plead facts sufficient to show that a Turn Key policy, procedure, practice, or custom was the moving force behind any alleged constitutional violation, and that Plaintiffs failed to identify a specific custom or policy as the moving force that caused Decedent's injuries. *Id.* at 18-19. Turn Key further argues that Plaintiffs failed to show deliberate indifference in its actions or properly illustrate a pattern of behavior to allege unconstitutional policies or practices. *Id.* at 21. Finally, Turn Key states that Plaintiffs failed to plead facts sufficient to establish a claim against Turn Key for a failure to train. *Id.* at 22.

### III. Rule 12(b)(6) Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 only requires "notice" pleading. Accordingly, it is not necessary that the pleader set forth each and every element or factual allegation of a claim. The "short and plain statement," however, must contain sufficient allegations of fact "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted). A pleading must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the plausibility test when a plaintiff pleads sufficient factual content that permits the court to make the reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the

plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way:

> A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits. So when reviewing such a motion, we assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff. The complaint survives if it contains sufficient factual matter . . . to state a claim to relief that is plausible on its face.

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citations and quotation marks omitted). Accordingly, the denial of a 12(b)(6) motion has no bearing as to whether a plaintiff

ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.

IV.   **Analysis**

   A.  **Applicable Law**

Section 1983 provides a vehicle for persons to redress the violation of federal law when their constitutional or federal statutory rights are deprived by any person acting "under color of any statute, ordinance, regulation, custom, or usage" of the State. 42 U.S.C. § 1983. Section 1983 secures or guarantees no rights; "[i]t 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). A plaintiff may defeat a 12(b)(6) motion if sufficient facts are alleged to show that he or she was (1) deprived of a federal right (2) by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton,* 382 U.S. 296, 299 (1966). Further, "a physician employed by [the State] to provide medical services to state prison inmates[ ] act[s] under color of state law for the purposes of § 1983" when it is providing medical care to an inmate. *West v. Atkins*, 487 U.S. 42, 54 (1988); *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (holding that there is no question that a private medical professional "treating a pretrial detainee on behalf of a governmental entity, was acting under color of state law for purposes of § 1983."). Along with individual healthcare providers, companies employed by the government to provide medical services to pretrial detainees are state actors for the purposes of § 1983. *See Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.,* 143 F.4th 569 (5th Cir. 2025) (holding that a Professional Limited

Liability Company employed to provide mental healthcare to pretrial detainees was a state actor under § 1983).

While Turn Key is a private limited liability company, it is subject to § 1983 liability because it performs the traditional government function of ensuring pretrial detainees receive their constitutional right to medical care. Plaintiffs allege that Turn Key and Rockwall County entered into a contract in September 2022 for healthcare personnel and administration at the Rockwall County Jail. Pls.' Am. Compl. at 35. Further, they allege that Turn Key had to (1) "comply with standards set forth by the Texas Department of Health and [Texas Commission on Jail Standards]," and (2) "arrange for hospitalization services and specialty care for detainees who, in the opinion of the treating provider and/or the medical director, required treatment beyond what was provided at a jail." *Id.* Turn Key contracted with Rockwall County to provide healthcare to pretrial detainees, thereby functioning as a state actor under § 1983. Accordingly, the court determines that Plaintiffs have set forth sufficient facts for the court to reasonably infer that Turn Key was acting under color of state law and Plaintiffs' claims under § 1983 may proceed.

### B. 42 U.S.C. § 1983 Claims

Turn Key contends that the court must analyze Plaintiffs' claims under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), because the court in *Duvall v. Dallas County,* 631 F.3d 203 (5th Cir. 2011), and *Estate of Bonilla v. Orange County,* 982 F.3d 298 (5th Cir. 2020), analyzed the claims under *Monell*. This argument is incorrect for several reasons. First, the court in *Duvall* held that it saw no meaningful distinction between the standard under *Monell*—which required a showing of a policy or custom of Dallas County, Texas—and the requirement to prove a pervasive or extended condition for a conditions of confinement claim, such that the district court committed an abuse of discretion. *Duvall,* 631 F.3d at 209. That statement was made in the

context of whether the district court abused its discretion, *not* whether *Monell* was the appropriate standard for a conditions of confinement claim. Second, unlike here, the plaintiffs in *Bonilla* brought claims "on two theories, one derived specifically from *Monell*, and one based on unconstitutional conditions of confinement." *Bonilla,* 982 F.3d at 308. Finally, neither of the cases Turn Key cites in support of its contention that the court must use the *Monell* standard involves a private health care provider. In both cases, the plaintiffs sued the respective county. Therefore, the court does not analyze Plaintiffs' § 1983 claims under *Monell.*

Plaintiffs raise claims under two theories of § 1983 liability: conditions of confinement and episodic acts or omissions. Pretrial detainees have constitutional rights that can be found in the substantive and procedural due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citation omitted). This includes the right to medical care and the right to be protected from known suicidal tendencies. *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citations omitted). Conditions of confinement claims arise when "durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza v. City of Donna*, 922 F.3d 626, 633-34 (5th Cir. 2019). On the other hand, an episodic act or omission claim "faults specific jail officials for their acts or omissions." *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) (citation omitted). In other words, conditions of confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves, and episodic acts or omissions claims challenge the constitutionality of the way in which a jail official or state actor applied a policy or custom in a particular instance. *Estate of Henson*, 795 F.3d at 466-67.

1. **Conditions of Confinement**

"A condition of confinement case is a [c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (citation and internal quotation marks omitted) (brackets in original). Pretrial detainees have the "right to be free from punishment [and] an understandable desire to be as comfortable as possible during [their] confinement, both of which may conceivably coalesce at some point." *Bell v. Wolfish*, 441 U.S. 520, 534 (1979). The question in a conditions of confinement claim is whether the challenged conditions amounted to punishment of the detainee. *Garza*, 922 F.3d at 632. To prevail on a conditions-of-confinement claim, a plaintiff must set forth sufficient facts for the court to reasonably infer the following:

> (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the inmate's constitutional rights.

*Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citations and internal quotation marks omitted).

Regarding the first element, a plaintiff need not allege that a state actor acted intentionally or knowingly. *Estate of Henson,* 795 F.3d at 463. "A properly-stated condition-of-confinement claim is not required to demonstrate actual intent to punish; intent may be inferred from an entity's decision to subject pretrial detainees to an unconstitutional condition." *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 877 (5th Cir. 2016) (citation omitted). A condition is usually the result of an explicit policy or restriction. *Shepherd v. Dallas County, Tex.*, 591 F.3d 445, 452 (5th Cir. 2009). In some cases, a condition may be the result of a *de facto* policy that is "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by jail officials, to prove an intended condition or practice." *Id.* at 452. "Showing a pervasive pattern is a heavy burden."

*Sanchez,* 956 F.3d at 793. "[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Shepherd*, 591 F.3d at 454.

In support of their condition of confinement claim, some of Turn Key's practices Plaintiffs alleged include: not having a full-time, properly licensed and experienced medical professional on staff; taking vital signs as "cover" in case of a serious medical event; failure to provide or delaying provision of medical treatment; failure to act on observation of serious health issues; ignoring video feeds for detainees with serious medical issues; refusal to transport detainees in need of medical care; only contacting emergency services when a detainee is near death or unresponsive; failure to adequately monitor detainees and their food/water consumption and sleep; failure to appropriately communicate medical needs between shift changes; and failure to reprimand employees for action or inaction related to Decedent's death. Pls.' Am. Compl. at 41-42. These allegations were supported by a time stamped narrative of Decedent's time in custody, observation records, Decedent's autopsy report, Texas Commission on Jail Standards reports, Turn Key's financial considerations, and a list of deaths or injuries in other instances involving Turn Key's care. *Id.* at 8-29, 31-34. Plaintiffs point to Decedent's personal experience, the experiences of others under Turn Key's care, and considerations and policies of Turn Key as a company. These factual allegations, if true, reasonably imply pervasive conditions or practices of Turn Key, as they collectively point to regular practices resulting in a failure to provide proper medical care to detainees under Turn Key. These allegations plausibly allege a condition or practice of Turn Key that is sufficiently pervasive to prove an intended condition. Plaintiffs have set forth facts sufficient to plead the first element of their conditions of confinement claim.

Regarding the second element, for conditions of confinement claims, a plaintiff must show that the condition at issue has no reasonable relationship to a legitimate government interest. *Duvall*, 631 F.3d 207. While neither party discussed the reasonable relationship test, they did discuss deliberate indifference, which is a functional equivalent. *Id.* ("[T]he reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases."). Plaintiffs allege that Turn Key markets the services it provides as cost-saving. Pls.' Am. Compl. 31. Plaintiffs further argue that Turn Key provided reduced staffing and attempted to avoid outside medical care and transportation. *Id.* at 41. Plaintiffs contend that Turn Key's failure to treat Mr. Galvan's condition amounts to punishment. *See Bell*, 441 U.S. at 534 (holding that pretrial detainees have the "right to be free from punishment [and] an understandable desire to be as comfortable as possible during [their] confinement, both of which may conceivably coalesce at some point."). Plaintiffs allege that this failure to treat was driven by cost-saving interests, rather than a legitimate government purpose. Despite having the burden to do so, Turn Key does not argue that any legitimate governmental objective justified its alleged failures. Plaintiffs have set forth facts sufficient to plead the second element of their conditions of confinement claim.

Finally, Plaintiffs contend that Mr. Galvan died as a result of a series of failures at the Rockwall County Jail, which included not providing emergency medical care, not preventing additional injuries from repeated falls, and refusing to transport him to a hospital to save money. This is supported by a time stamped narrative of Decedent's time in custody and his autopsy report. Plaintiffs have set forth facts sufficient to plead the third element of their conditions of confinement claim. Taking Plaintiffs' well-pleaded allegations as true, the court determines that the facts set forth in the Amended Complaint are sufficient for it to reasonably infer the existence of

unconstitutional conditions of confinement at the Rockwall County Jail. Therefore, the Second Motion is **denied** with respect to Plaintiffs' conditions of confinement claim.

### 2. Episodic Acts or Omissions

To prevail on an episodic-act claim, a plaintiff must set forth sufficient facts for the court to reasonably infer the following:

> (1) that the municipal employee violated [the decedent's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.

*Cadena*, 946 F.3d at 727 (citations and internal quotation marks omitted). Unlike a conditions of confinement claim, an episodic act or admission claim "faults specific jail officials for their acts or omissions." *Estate of Henson,* 795 F.3d at 463 (citation and internal quotation marks omitted). The jail official "is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* (citation and internal quotation marks omitted). Disagreements about the type of medical treatment are insufficient to show deliberate indifference, "but the denial of recommended medical treatment is often sufficient to show deliberate indifference." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). Further, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).

Plaintiffs do not complain about specific medical treatment or lack thereof; instead, they contend that Mr. Galvan died as a result of poor policies, customs, and training. *See generally* Pls.' Am. Compl. This alone, is insufficient to establish deliberate indifference because Plaintiffs are

"relying on an alleged denial or delay of medical care" and must "show deliberate indifference by demonstrating that an official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) (quoting *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018)). Plaintiffs do not allege that any Turn Key employee (1) refused to treat Mr. Galvan, (2) ignored any of his complaints, (3) intentionally treated him incorrectly, or (4) engaged in any conduct that would *clearly* evince a wanton disregard for serious medical needs. Plaintiffs fail to set forth facts sufficient to plead the first element of their episodic act or omission claim against Turn Key based on the denial of medical care. For this reason, Plaintiffs have failed to allege that any episodic-act-or-omission claim is attributable to Turn Key. Therefore, the Second Motion is **granted** with respect to Plaintiffs' episodic act or omission claim.

### 3. Texas Statutory Claims

Texas's wrongful-death statute provides, "[a] person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default." Tex. Civ. Prac. & Rem. Code § 71.002(b). "Unlike the Wrongful Death Act, however, the Survival Statute does not create a new cause of action." *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993). "Rather, it simply provides that a cause of action for personal injury to the health, reputation, or person of an injured person survives the death of the injured party to and in favor of the heirs, legal representatives, and estate of the injured person." *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 71.021) (internal quotation marks omitted).

Courts must look to state wrongful-death and survival statutes to determine which parties have standing to bring wrongful-death and survival claims under § 1983; in this case, the Texas wrongful-death and survival statutes "set forth the parties who can bring suit." *Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000). "An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.[2]" Tex. Civ. Prac. & Rem. Code § 71.004(b). Thus, Plaintiffs have standing to bring wrongful-death and survival claims under § 1983.

"Texas law is clear that under the Wrongful Death Act, liability may be predicated only on an injury that causes an individual's death." *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264 (5th Cir. 2016) (cleaned up). "[A] plaintiff seeking to recover under Texas's wrongful death statute must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree." *Id.* (citation omitted). Further, Plaintiffs must sufficiently set forth "both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Montano*, 842 F.3d at 882. "The ultimate standard of proof on the causation issue is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Id.* (citations and internal quotation marks omitted).

---

[2] In their Amended Complaint, Plaintiffs allege that "Emilia Galvan asserts claims in the capacity of independent administrator on behalf of all wrongful death beneficiaries," which include her, as Mr. Galvan's mother, and his father, Jose Galvan. Pls.' Am. Compl. 3. Plaintiffs further allege that "Emilia Galvan asserts claims on behalf of and seeks all survival and other damages available under law to the Claimant Heirs." *Id.* Finally, Plaintiffs state that Ms. Galvan "qualified as independent administrator in Cause Number P24-14758, in the County Court at Law of Hopkins County, Texas."

As previously stated, Plaintiffs' allegations that Mr. Galvan died as a result of a series of failures at the Rockwall County Jail, which included not providing emergency medical care, not preventing additional injuries from repeated falls, and refusing to transport him to a hospital to save money, are sufficient to state a viable claim under § 1983. Further, Plaintiffs' allegations that Mr. Galvan fell and hit his head several times on several different occasions and that his cause of death was blunt force trauma, which Turn Key does not dispute, are sufficient allegations for the court to reasonably infer that Turn Key is liable for the conduct alleged in the Amended Complaint regarding Plaintiffs' § 1983 claim. At this stage of litigation, Plaintiffs' allegations are sufficient for the court to reasonably infer that a causal link exists between Turn Key employees' conduct. Accordingly, Turn Key's Second Motion regarding this claim is **denied**.

### C. Medical Negligence Claim

For medical negligence actions, a plaintiff must set forth allegations from which a court can reasonably infer that: "(1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citation omitted). Plaintiffs must first set forth allegations on "the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence." *Id.* (citation omitted). Generally, expert testimony is required when the alleged negligence is "of such a nature as not to be within the experience of the layman." *FFE Transp. Serv., Inc. V. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004) (citations and internal quotation marks omitted).

Plaintiffs contend that Turn Key owed Mr. Galvan a duty of care; its employees and agents did not meet the required standard of care and breached the duties they owed Mr. Galvan; and as a result, he died. Pls.' Am. Compl. at 47. Aside from the conclusory statement that Turn Key did

not meet the required standard of care, Plaintiffs do not articulate what the standard of care is. Plaintiffs do not allege the standard that a reasonably prudent physician would be held to under similar circumstances. Earlier in the Amended Complaint, Plaintiffs contended that Mr. Galvan should have been taken to the hospital and Turn Key should have done more than take his vitals, but this alone is insufficient. These statements demonstrate an alleged failure, but they do not demonstrate what the standard of care is in situations such as Mr. Galvan's. Plaintiffs do not sufficiently allege a standard of care or that a Turn Key employee or agent breached that duty of care. Accordingly, Turn Key's Second Motion regarding this claim is **granted.**

## V.    Conclusion

For the reasons stated herein, the court **denies as moot** the First Motion (Doc. 9) and **grants in part** and **denies in part** the Second Motion (Doc. 17). Plaintiffs' claims for episodic acts or omissions and medical negligence are **dismissed without prejudice** against Turn Key for failure to satisfy the pleading requirements outlined in Rule 8 and 12(b)(6). The court **orders** Plaintiffs to file a Second Amended Complaint by **5 p.m.** on **October 24, 2025**, that cures the deficiencies herein noted as to their claims for episodic acts or omissions and medical negligence. Failure to comply with this directive will result in the dismissal with prejudice of Plaintiffs' claims for episodic acts or omissions and medical negligence, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, or dismissal without prejudice for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**It is so ordered** this 29th day of September, 2025.

Sam A. Lindsay
United States District Judge